IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLORIA YVONNE HUGHLEY,                    *

    Plaintiff,                    *

v.                    *          Civil Action No. GLR-22-1654

JILL MARION, et al.,                    *

    Defendants.                    *

***

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court on Defendants Jill Marion, Xavier Becerra, Michael El-Shammaa, Natasha Ferrell, and Carole Sepulvado's ("Employer Defendants")[1] Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 23). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant in the Motion.

## I.      BACKGROUND

A.      <u>**Factual Background**</u>[2]

Self-represented Plaintiff Gloria Yvonne Hughley is a self-identified African-American woman who began working for the federal government as a medical laboratory technician for the Department of Defense in 1982. (Compl. at 8, ECF No. 1).[3] Hughley

---

[1] The Court will direct the Clerk to amend the docket to reflect the full and correct names of Defendants.

[2] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

was born in 1957, and she suffers from irritable bowel syndrome ("IBS"). (Id.) At some point during her employment with the Department of Defense, Hughley filed an EEO complaint and obtained a settlement that required the government to find her a new position as a reasonable accommodation. (Id. at 8−9). Hughley was reassigned and began work as program analyst for the Department of Health and Human Services ("DHHS"), Division of Patient Safety Partnership ("DPSP") on April 6, 2015. (Id. at 8). While Hughley was employed with DPSP, Defendant Xavier Becerra was the Secretary of DHHS. (See Mem. Supp. Mot. Dismiss ["Mot. Dismiss"] at 14, ECF No. 23-1). Hughley alleges that her supervisors, Defendants Michael El-Shammaa and Jill Marion, were aware of her prior protected activity because they knew that Hughley was awarded the position as a reasonable accommodation. (Compl. at 9). Hughley noticed "tension" with El-Shammaa and Marion because they were "forced to accept" Hughley as an employee, and they did not interview or select her in the normal hiring process. (Id. at 12). Hughley also knew that El-Shammaa had previously harassed an older African American woman employee. (Id. at 15).

Shortly after starting her work at DPSP, Hughley spoke to Marion and told her about her age, and she also informed Marion that she needed to be close to restroom due to her disability. (Id. at 9). Marion assigned Hughley to a cubicle close to the bathroom, but Hughley felt that Marion was prejudiced against her because of her age. (See id. at 9). Hughley also told El-Shammaa that she had a hip injury, and she gave him a doctor's note that excused her from any lifting duties. (Id. at 10). Additionally, Hughley had earned

2

significant paid leave because of her many years of service with the government, but she felt that El-Shammaa and Marion did not want to her to take the leave. (Id. at 9).

Hughley expected the program analyst position to involve survey and research responsibilities because the position description said that the analyst would "conduct studies in order to identify, analyze and recommend solutions to problems found in internal administrative operations." (Id. at 10). Further, the position description required knowledge of MedSun, a software program for tracking clinical reports, as well as Adobe, Microsoft Outlook, Word, and Excel. (Id. at 11). Finally, the description also mentioned the applicant's need to have knowledge of "FDA procedures and process for various tasks" including "travel, new employee orientations," etc. (Id.).

To Hughley's surprise, her work at as program analyst did not involve much research, but rather "timekeeping and travel duties and data analysis." (Id.). She had no experience in these tasks and alleges that DPSP provided insufficient training. (Id.). Hughley discussed her duties with Marion in comparison with her previous position in the lab. (Id. at 12). Marion told her that DPSP did not have any laboratories, and that if she wanted a similar job to the laboratory assistant position, she should find a different job entirely. (Id.).

Marion and El-Shammaa criticized Hughley's performance because she was inexperienced with timekeeping and travel software. (See id.). Hughley alleges that the lack of training ensured that she "was never given a fair start while others were given the time to successfully implement time keeping." (Id.). Specifically, Hughley only received a cursory timekeeping training during orientation, and she did not receive any follow up

training until April 2016. (<u>Id.</u> at 13). As for travel software, Hughley was originally trained on GovTrip, but DPSP later switched to Concur, and she did not receive any Concur training until after April 2016. (<u>Id.</u> at 14). The Timekeeping Lead, Jodi Parker, audited Hughley's records and determined that she made errors due to insufficient training. (<u>Id.</u> at 16). Nevertheless, Hughley's assigned mentor, Defendant Natasha Ferrell, did not provide guidance, and she informed El-Shammaa and Marion about Hughley's mistakes. (<u>See</u> <u>id.</u> at 15).

Additionally, El-Shammaa told Hughley not to approach coworkers with her questions, but to only seek assistance from him. (<u>Id.</u> at 12). However, El-Shammaa was not an expert in time-keeping, so his instruction only "tied [Hughley's] hands." (<u>Id.</u>). El-Shammaa also bullied Hughley, belittled her for minor mistakes, and he was frequently "hostile and intimidating" when speaking with her. (<u>Id.</u> at 13).

On March 29, 2016, DPSP placed Hughley on a 60-day performance improvement plan ("PIP"), which required her to improve with timekeeping, providing critical support (such as travel software), and WebEx. (<u>Id.</u> at 15). Defendant Carol Sepulvado, a DPSP labor and employee relations specialist, advised El-Shammaa about administering the PIP. (<u>Id.</u>). Hughley alleges that while she was on the PIP, El-Shammaa assigned her new duties that she had not been responsible for in the past, such as setting up WebEx conferencing and managing the MedSun help line. (<u>Id.</u> at 16). He also assigned particularly difficult timekeeping and travel projects as a "plan to make [her] fail the PIP so that they could get rid of [her] as the older worker with the accommodation and a lot of leave whom they were forced to take to fill the position." (<u>Id.</u> at 14).

After the 60-day period ended, El-Shammaa determined that Hughley had failed to meet performance expectations for timekeeping and critical support, and he recommended termination. (Id. at 16−17). Hughley was placed on administrative leave. (Id. at 17). While she was on leave, Marion sent Hughley an invitation to an office party to her personal email, and Hughley considered this to be harassment and an attempt to embarrass her. (Id.). DPSP later terminated Hughley. (See id. at 18).

Hughley alleges that other employees made timekeeping mistakes and they were not criticized, put on a PIP, or terminated like her. (Id. at 12). DPSP also allowed "other employees" to go on details while Hughley was not allowed. (Id. at 15). For example, Daniel Jacobson, a younger white male on the customer service team, was not subject to hostility, and management overlooked any errors he made. (Id.). Additionally, Suzanne Rich, a white and not disabled woman, and Sherry Markwell, a white and younger woman, were treated better than Hughley. (Hughley Aff. ¶ 21, ECF No. 33-2).

**B.  Procedural History**

Hughley filed an administrative complaint of discrimination on September 16, 2016. (Admin. Compl. at 1, ECF No. 23-30). She received a Right to Sue Letter on April 5, 2022. (Compl. at 19). On July 6, 2022, Hughley filed a form Complaint against Employer Defendants[4] alleging: race, color, and gender discrimination under Title VII of the Civil

---

[4] In her Opposition to the Motion to Dismiss, Hughley concedes that the Defendants other than Becerra should be dismissed. (Mem. Supp. Opp'n Mot Dismiss ["Opp'n"] at 18, ECF No. 33-1). Indeed, "[w]ithin the context of a civil suit brought against a government employer pursuant to Title VII, the Rehabilitation Act, or the ADEA, the only proper defendant is the head of the agency, department, or unit in question." Gatewood v. Johnson, No. JKB-16-0854, 2016 WL 6569060, at *4 (D.Md. Nov. 4, 2016). Accordingly, Becerra

Rights Act of 1964, 42 U.S.C. § 2000e et seq.; age discrimination under the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 et seq.; disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq.; retaliation for prior EEO activity under Title VII; and hostile work environment under Title VII.[5] (Compl. at 4−9). Employer Defendants filed the instant Motion to Dismiss, or in the Alternative for Summary Judgment, on February 11, 2023. (ECF No. 23). Hughley filed an Opposition on May 12, 2023 (ECF No. 33)[6] and Employer Defendants filed a Reply on May 26, 2023 (ECF No. 34).

## II. DISCUSSION

### A. <u>Conversion</u>

Employer Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for

---

is the only proper Defendant as Secretary of DHHS. The Court will direct the Clerk to terminate the other Defendants and dismiss the claims against them.

[5] Although Hughley did not expressly list hostile work environment as a claim, she alleges that she was subjected to "hostile and abusive treatment." (Compl. at 12). Thus, because the Court is obligated to liberally construe Hughley's Complaint, it will determine whether she states a claim for hostile work environment.

[6] As noted above, Hughley is self-represented, but counsel assisted her in preparing her Opposition, which is permitted under Local Rule 102.1(ii). (See Opp'n at 1).

summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir.

1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Here, although the requirements for conversion have been met, the Court declines to convert the Motion into one for summary judgment. Hughley has filed an Affidavit explaining the need for discovery. (ECF No. 33-3). Further, the Court finds that it may consider the parties' Exhibits without converting the Motion. Although courts may not ordinarily consider extrinsic evidence in evaluating a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see

Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, the Court notes that all of the Exhibits submitted by both parties were documents from Hughley's previous administrative EEO complaint. This Court has consistently held that administrative complaint documents are integral to complaints alleging workplace discrimination. See White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that the EEOC charge was integral to plaintiff's complaint); Jones v. Wormuth, No. ADC-21-860, 2021 WL 4290486, at *4 (D.Md. Sept. 21, 2021) (same). Accordingly, the Court will consider the parties' Exhibits without converting the Motion.

**B.    Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must

allege sufficient facts to establish each element. <u>Goss v. Bank of Am., N.A.</u>, 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012)), <u>aff'd</u>, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. <u>Albright</u>, 510 U.S. at 268; <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. <u>See</u> <u>Johnson v. Silver</u>, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

**C.   <u>Analysis</u>**

**1.   Exhaustion of Administrative Remedies**

Employer Defendants first argue that Hughley's claims of disability discrimination due to her IBS and hip injury must be dismissed because she did not raise these claims at the administrative level. (Mot. Dismiss. at 16). Hughley responds that her administrative claim included a claim for discrimination due to physical disabilities, and therefore she exhausted her administrative remedies. (Opp'n at 29 (citing EEO Letter of Acceptance at 1, ECF No. 23-31)). At bottom, the Court agrees with Employer Defendants.

Plaintiffs asserting Title VII claims must exhaust administrative remedies by filing an administrative complaint prior to pursuing a federal lawsuit. See Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012); 42 U.S.C. § 2000e–5(b), (f)(1). "[A] plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Sydnor, 681 F.3d at 593. In other words, the "allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." Guluma v. DeJoy, No. DLB-20-3588, 2022 WL 1642261, at *3 (D.Md. May 24, 2022). "Thus, when a plaintiff's administrative charge alleges discrimination on one basis or one type of discrimination but he introduces another basis or type of discrimination in formal litigation, the new claims 'will generally be barred[.]'" Id. (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005)).

Here, there is no mention of discrimination based on Hughley's IBS or hip injury in the administrative record. Consequently, she cannot raise these claims in this lawsuit, and the Court finds that she did not exhaust her administrative remedies as to her disability discrimination claims. The Court also finds, in the alternative, that even if Hughley had exhausted her administrative remedies, she still has failed to state a claim for disability discrimination under Title VII for the reasons explained below.

## 2.      Discrimination

Employer Defendants argue Hughley has failed to state a plausible claim for discrimination due to her race, color, gender, age, or disability.[7] (Mot. Dismiss at 17–23). Title VII prohibits an employer from discriminating against employees due to race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Hughley's claim under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

---

[7] Age discrimination is prohibited by the ADEA, see 29 U.S.C. § 623(a); 42 U.S.C. § 2000e-2(a), and disability discrimination is governed by the ADA, 42 U.S.C. § 12101(b). Nevertheless, the analysis of ADEA and ADA discrimination claims follow the same framework as a Title VII claim, so the Court's analysis of the Title VII claims shall also constitute its analysis of the ADEA and ADA claims. See Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019) (applying the McDonnell Douglas burden-shifting framework to an ADEA claim); Equal Emp. Opportunity Comm'n v. Mfrs. & Traders Tr. Co., 429 F.Supp.3d 89, 118 (D.Md. 2019) (explaining that an ADA discrimination claim may be proved, like a Title VII claim, via direct or indirect evidence of discrimination).

To establish a discrimination or retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework, Hughley must <u>eventually</u> put forth a prima facie case by establishing that:

> (1) she belongs to a protected class;
> (2) she suffered an adverse employment action;
> (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate expectations . . . ; and
> (4) she was rejected [or terminated] under circumstances giving rise to an inference of unlawful discrimination.

<u>See</u> <u>Adams v. Trs. of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)). If Hughley succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." <u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." <u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004)

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 510 ("The prima facie case under <u>McDonnell Douglas</u>, however, is an evidentiary standard, not a pleading requirement."); <u>accord</u> <u>Parker v. Child.'s Nat'l Med. Ctr., Inc.</u>, No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need

not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558. This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Court considers the "totality of the circumstances" in determining whether Hughley has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Employer Defendants first argue that Hughley cannot establish a prima facie case of discrimination because she admittedly did not perform her job at a level that met her employer's legitimate expectations. (Mot. Dismiss at 19). Hughley responds that the facts of this case are atypical, and that Employer Defendants' "discriminatory conduct caused her deficient performance—and as such, analyzing it under a strict interpretation of the [McDonnell Douglas factors] would be in error." (Opp'n at 26). The Court agrees with Hughley.

It is well-settled law that prima facie showings of discrimination vary in different factual situations, McDonnell Douglas, 411 U.S. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. at 512 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567 (1978)). Here, given Hughley's allegation that Employer Defendants purposely failed to train her and placed her on the PIP intending for her to fail, it would be inappropriate to strictly apply the third factor of the McDonnell Douglas framework against her. Accordingly, the Court will not consider Hughley's deficient performance in its determination of whether she has stated a claim for Title VII discrimination.

Next, Employer Defendants argue that Hughley has not established any evidence of discriminatory treatment because she did not show that similarly situated employees outside her protected class were treated more favorably. (Mot. Dismiss at 21). Hughley contends that Daniel Jacobson, Sherry Markwell, and Suzanne Rich are valid comparators. (See Opp'n at 27). At bottom, the Court agrees with Employer Defendants.

15

This Court has previously dismissed Title VII complaints in which the only allegations of discriminatory intent come from insufficient comparator evidence. <u>See</u> <u>Chatelle v. Maryland</u>, No. GLR-21-1734, 2022 WL 2953042, at *8 (D.Md. July 25, 2022) (dismissing complaint when comparator evidence fails to establish discriminatory intent or causation); <u>Price v. Howard Cnty. Pub. Sch. Sys.</u>, No. GLR-22-541, 2023 WL 170425, at *10 (D.Md. Jan. 11, 2023) (same). Further, to the extent they intend to rely on comparator evidence, plaintiffs in the Fourth Circuit demonstrate that they are similarly situated with a comparator "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" <u>Tinsley v. City of Charlotte</u>, 854 F.App'x 495, 500–01 (4th Cir. 2021) (quoting <u>Haynes v. Waste Connections, Inc.</u>, 922 F.3d 219, 223–24 (4th Cir. 2019)).

Here, Hughley's comparator allegations are unconvincing. First, she states that Jacobson was younger, white, and male, and that he was not treated with equal "hostility or scrutiny." (Compl. at 15). She also says that Markwell was younger and white and that Rich was white and not disabled, and that they were treated better than her. (Hughley Aff. ¶ 21). Lastly, Hughley claims that "other employees" were allowed to apply for and accept details and she was not. (Compl. at 15). These facts do not establish that Jacobson, Rich, or Markwell had the same supervisor, or that they were subject to the same standards and engaged in the same conduct as Hughley. <u>See</u> <u>Tinsley</u>, 854 F.App'x at 500–01. As for the unidentified "other employees," Hughley has also not shown that they were similarly

situated to her, or that they were outside of her protected class groups. <u>See</u> <u>White</u>, 375 F.3d at 295 (requiring comparators to be outside of the plaintiff's protected class). Accordingly, she has not established valid comparator evidence.

Without comparator evidence or other evidence allowing the Court to make an inference of discrimination, Hughley's discrimination claims must fail. She alleges that Employer Defendants treated her unkindly and failed to train her properly, but even liberally construing the Complaint and viewing the facts in the light most favorable to Hughley, the Court cannot infer that Employer Defendants acted with discriminatory animus based on race, color, gender, age, or disability. The Court will therefore dismiss the discrimination claims.

### 3.   Retaliation

Employer Defendants argue that Hughley's retaliation claim must be dismissed because there is no causal connection between her prior EEO activity and any alleged adverse action. (Mot. Dismiss at 23−24). Hughley responds that Employer Defendants were aware of her prior EEO activity and that she was immediately subjected to adverse employment actions via harsh criticism, hostility, and deficient training because El-Shammaa "resented having her on his staff due to the settlement." (Opp'n at 21−22). Hughley further alleges that the temporal proximity of El-Shammaa's hostile treatment shows that her protected activity caused the actions taken against her. (<u>Id.</u> at 22). At bottom, the Court finds that El-Shammaa's alleged hostility does not constitute an adverse action, and that the time lapse between Hughley's employment and the PIP is too attenuated to show causation.

Title VII prohibits an employer from retaliating against an employee who exercises her Title VII rights. Hart v. Lew, 973 F.Supp.2d 561, 582 (D.Md. 2013). In order to establish a prima facie claim of retaliation under Title VII, Hughley "must show that she engaged in protected activity, that her employer took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment activity. Id. (cleaned up). If she succeeds in establishing a prima facie case, the McDonnell Douglas framework applies, just as it does for a discrimination claim: "If a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for the adverse action, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. (cleaned up).

In a retaliation claim, the standard for an adverse employment action is more lenient than for a substantive discrimination claim. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). A plaintiff need only show that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68. Nonetheless, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" Geist v. Gill/Kardash P'ship, 671 F.Supp.2d 729, 738 (D.Md.2009) (quoting Burlington Northern, 548 U.S. at 68).

To satisfy the third element, a causal connection between the protected activity and the adverse action, a plaintiff must show that "the employer [took] the adverse employment

18

action <u>because</u> the plaintiff engaged in a protected activity." <u>Dowe v. Total Action Against</u> <u>Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir.1998) (emphasis in original). The Fourth Circuit "has held that evidence that the alleged adverse action occurred <u>shortly</u> after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" <u>Id.</u> (quoting <u>Williams v.</u> <u>Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir.1989)) (emphasis and alterations in <u>Dowe</u>). Conversely, "the opposite [is] equally true," so that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." <u>Dowe</u>, 145 F.3d at 657 (finding a period of time exceeding three years too lengthy to give rise to the inference of a causal connection); <u>Clarke v. DynCorp Int'l LLC</u>, 962 F.Supp.2d 781, 790 (D.Md. 2013) ("[A] lapse of as little as two months between the protected activity and an adverse employment action is sufficiently long so as to weaken significantly the inference of causation.") (citation omitted); <u>Pascual v. Lowe's Home Centers, Inc.</u>, 193 F.App'x 229, 233 (4th Cir. 2006) (two to four month period between protected activity and termination was "too long to establish a causal connection by temporal proximity alone.").

Here, there is no evidence that Hughley suffered any adverse action prior to the PIP. Hughley claims that El-Shammaa's harsh criticisms, which began immediately after she started work, constituted adverse action, but simple criticism does not meet the Fourth Circuit's standard for adverse action. While the standard for an adverse employment action is more lenient for a retaliation claim than a discrimination claim, plaintiffs must still show that the action "might have 'dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" Burlington Northern, 548 U.S. at 68 (quoting Rochon v. Gonzales, 438F.3d 1211, 1219 (D.C. Cir. 2006). For example, in Hart v. Lew, this Court found that the employer's actions constituted adverse actions where the plaintiff's supervisor "expressed anger and disapproval with [plaintiff] for repeatedly filing EEO complaints" and "chastised" her for speaking to an EEO counselor. 973 F.Supp.2d at 583–84. This differs greatly from the instant case, where Hughley's supervisors allegedly knew of her EEO activity but only expressed dissatisfaction with her work performance. Hughley does not allege that either El-Shammaa or Marion criticized her decision to file an EEO complaint, or that they discouraged her from filing future complaints. Accordingly, the Court concludes that El-Shammaa's criticism was not an adverse action and that the first adverse action occurred when DPSP placed Hughley on the PIP.

The Court further finds that the time lapse between Hughley's employment and the PIP was too long to establish a causal connection. Hughley began working for DPSP on April 6, 2015, and she was placed on the PIP on March 29, 2016, almost a year later. Such a time frame is too long to show causation, and because Hughley does not allege any additional facts to show causation, her retaliation claim must fail. See Pascual, 193 F.App'x at 233 (two to four month period was insufficient to show a causal connection by temporal proximity alone.).

### 4.    Hostile Work Environment

Employer Defendants argue that Hughley's claim for hostile work environment must be dismissed because she does not allege severe or pervasive conduct, and she does not show that her supervisors were hostile because of her protected classes. (See Reply

Opp'n. Mot. Dismiss at 4–5, ECF No. 34). Hughley contends that she did suffer from severe and pervasive treatment in the form of assigned duties that she was never trained for, placing her on the PIP, frequently criticizing her, and terminating her. (Opp'n at 25). At bottom, the Court agrees with Employer Defendants.

Title VII provides a cause of action for hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mustafa v. Iancu, 313 F.Supp.3d 684, 695 (E.D.Va. 2018) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected classes]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto, 786 F.3d at 277 (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). In determining whether discriminatory conduct is pervasive enough to render the work environment objectively abusive, courts look to "all the circumstances[,] [which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. "[N]o single factor is required." Id. The court "can consider actions that contributed to the hostile work

environment but occurred prior to [the bounds of the statute of limitations], under the continuing violation doctrine." U.S. EEOC v. Phase 2 Invs. Inc., 310 F.Supp.3d 550, 574 (D.Md. 2018). "In order to support a claim for hostile work environment, the alleged conduct must not only 'create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive.'" Nicole v. Grafton Sch., Inc., 181 F.Supp.2d 475, 482 (D.Md. 2002) (quoting Spriggs v. Diamond Auto Glass II, 242 F.3d 179, 183 (4th Cir. 2001)).

Here, while it is clear that Hughley suffered unwanted conduct and that she belonged to several protected classes, she cannot establish the second or third elements of her claim. First, she has not shown that Employer Defendants' conduct was based on her protected classes for the reasons set forth infra in the Court's analysis of the discrimination claim. Second, even liberally construing the Complaint and examining the totality of the circumstances, there are no facts showing severe or pervasive conduct. Hughley alleges that El-Shammaa and Marion treated her unkindly, criticized her work, and did not train her properly, but these allegations establish only a workplace dispute over performance, training, and job duties, rather than the severe, humiliating, and threatening conduct needed to state a claim for hostile work environment. Accordingly, the Court will dismiss the hostile work environment claim.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss. (ECF No. 23). A separate Order follows.

Entered this 13th day of September, 2023.

_____ /s/

George L. Russell, III
United States District Judge